IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QSOFT CONSULTING, LIMITED | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-391 (JJF) |
| | ) | |
| TEDDY TONG and TDTONG LTD. | ) | |
| | ) | |
| Defendants. | ) | |

**APPLICATION FOR THE ISSUANCE OF A LETTER OF REQUEST
FOR THE PRODUCTION OF DOCUMENTS OF A THIRD-PARTY IN THE
RUSSIAN FEDERATION PURSUANT TO THE HAGUE EVIDENCE CONVENTION**

Plaintiff, QSOFT CONSULTING, LIMITED ("QSoft"), respectfully applies for the issuance by the Court of a Letter of Request in the form attached hereto as Exhibit A, addressed to the Central Authority in the Russian Federation, for the production of documents of Webmoney Transfer Ltd. ("Webmoney"), a corporation operating in the Russian Federation that transferred the funds used to purchase many of the websites registered by Teddy Tong and TD Tong Ltd. (collectively, "Defendants") at issue in this litigation. This Application is made pursuant to, and in conformity with, The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. 7444, 23 U.S.T. 2555, reprinted in 28 U.S.C. §1781, ("Hague Evidence Convention"), which is in force between the United States and the Russian Federation.

Issuance of the Letter of Request under The Hague Evidence Convention is a proper method for obtaining discovery from entities incorporated abroad. FED. R. CIV. P. 45; *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) (recognizing that the production of documents located abroad may be compelled through the procedures set forth in

the Hague Convention); *Abbott Laboratories v. Impax Laboratories, Inc.*, 2004 WL 1622223, at *2 (D. Del. 2004) ("As a threshold matter, I agree with the parties that application of the Hague Convention is appropriate here, as the witnesses are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of France, and are not otherwise subject to the jurisdiction of this court."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005) (stating that "Power Integrations may apply the processes of the Hague Convention to subpoena LGE-Korea").

This request is necessary to aid in the identification of the Defendants - Defendants have provided false contact information when registering the multiple domain names at issue in the underlying litigation. Webmoney is not a party to this lawsuit - it is the online service by which Defendants have paid for many of the domain names at issue in the underlying litigation. Furthermore, Webmoney is a corporation organized under the laws of the Russian Federation and is not otherwise subject to the jurisdiction of this Court. Thus, this request is an appropriate means of obtaining documents from Webmoney.

Accordingly, QSoft requests that the Court approve and sign the attached Letter of Request. QSoft further requests that after the Court has signed the Letter of Request, the Clerk of this Court authenticate the Court's signature under the seal of this Court, and that the Letter of Request be thereafter returned by the Clerk to QSoft's undersigned counsel. Counsel will promptly cause the Letter of Request to be translated into the Russian language, as required by Art. 4 of the Hague Evidence Convention, and will transmit the Letter, together with the translation, to the Russian Federation Central Authority for execution in conformity with Art. 2 of the Convention.

Insofar as QSoft has a Motion for Preliminary Injunction pending in this Court, QSoft further respectfully requests that this Application be handled in an expedited manner.

Respectfully submitted,

Dated: August 10, 2007

**GREENBERG TRAURIG, LLP**

*/s/ Sandra G. M. Selzer*
Donald J. Detweiler (I.D. #3087)
Sandra G. M. Selzer (I.D. #4283)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

-and-

Paul D. McGrady, Jr. (pro hac vice)
Anthony L. Abboud (pro hac vice)
Paul A. Del Aguila (pro hac vice)
Jason B. Elster (pro hac vice)
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
312-456-8400

Attorneys for QSoft Consulting Limited

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QSOFT CONSULTING, LIMITED ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 07-cv-391 (JJF) |
| ) | |
| TEDDY TONG and TDTONG LTD. ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

I, Sandra G. M. Selzer, being duly sworn according to law, deposes and says that she is employed by Greenberg Traurig, LLP, which is counsel for the Plaintiff, QSoft Consulting, Limited, for the above-captioned action, and that on this 10th day of August 2007 she caused copies of the *APPLICATION FOR THE ISSUANCE OF A LETTER OF REQUEST FOR THE PRODUCTION OF DOCUMENTS OF A THIRD-PARTY IN THE RUSSIAN FEDERATION PURSUANT TO THE HAUGE EVIDENCE CONVENTION* to be served upon the parties listed below via Registered First Class Mail.

| Teddy Tong<br>45 10th Avenue # 19<br>Princeton, NJ 08540 | Teddy Tong<br>Lengting Avenue 14-51<br>San Francisco, CA 94104 |
|---|---|
| tdtong, ltd.<br>45 10th Avenue # 19<br>Princeton, NJ 08540 | tdtong, ltd.<br>Lengting Avenue 14-51<br>San Francisco, CA 94104 |

Dated: August 10, 2007

_____
Sandra G. M. Selzer (No. 4283)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
302-661-7000 - Telephone
302-661-7360 - Facsimile

Counsel to the Plaintiff

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QSOFT CONSULTING, LIMITED | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 07-391 (JJF) |
| TEDDY TONG and TDTONG LTD. | ) ) ) | |
| Defendants. | ) | |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE PURSUANT
TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON TAKING
OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

*To the extent that this request may be handled in an expedited manner, the Requesting
Authority respectfully requests that it be so handled.*

1. **Sender:**

   United States District Court For the District of Delaware
   J. Caleb Boggs Federal Building
   844 North King Street
   Wilmington, Delaware 19801
   U.S.A.

2. **Central Authority of the Requested State:**

   The Ministry of Justice of the Russian Federation
   ul.Zhitnaya, 14
   Moscow, 117970
   Russian Federation

3. **Person to whom the executed request is to be returned:**

   Hon. Joseph J. Farnan, Jr.
   United States District Judge
   United States District Court for the District of Delaware
   J. Caleb Boggs Federal Building
   844 North King Street
   Room 4124, Lockbox 27
   Wilmington, Delaware, 19801 U.S.A.
   Phone: (302) 573-6155

4. **<u>In conformity with Article 3 of the Convention, the undersigned applicant has the honor to submit the following request:</u>**

    a. *Requesting judicial authority:*

        United States District Court for the District of Delaware
        844 North King Street
        Room 4124, Lockbox 27
        Wilmington, Delaware, 19801 U.S.A.
        Phone: (302) 573-6155

    b. *To the competent authority of:*

        The Russian Federation

    c. *Names and addresses of the parties and their representatives:*

    *PLAINTIFF:*

        QSOFT CONSULTING LIMITED

    *REPRESENTATIVES:*

        Paul D. McGrady, Jr.
        Anthony L. Abboud
        Paul A. Del Aguila
        Jason B. Elster
        77 West Wacker Drive, Suite 2500
        Chicago, Illinois 60601
        312-456-8400

        -and-

        Donald J. Detweiler
        Sandra G. M. Selzer
        The Nemours Building
        1007 North Orange Street, Suite 1200
        Wilmington, DE 19801
        302-661-7000

    *DEFENDANTS:*

        TEDDY TONG and TD TONG LTD.

    *REPRESENTATIVES:*

        Unknown

5. **Nature and purpose of the proceedings and summary of the facts:**

This is a civil suit. Plaintiff QSOFT CONSULTING LIMITED has accused Defendants Teddy Tong and TD Tong Ltd. of violating the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act, the Computer Fraud and Abuse Act, the Anticybersquatting Consumer Protection Act, Section 43(c) of the Lanham Act, Delaware's Deceptive Trade Practice Act, and is also asserting common law trespass to chattel and breach of contract claims. To date, the Defendants have yet to contact Plaintiff's counsel or make a formal court appearance.

6. **Evidence to be obtained or other judicial act to be performed:**

It is requested that Webmoney Transfer Ltd. ("Webmoney") produce certain documents that relate to the Defendants' use of Webmoney to pay for the following domain names: <gayhost.org>, <myqaydar.com>, <gaydarguyz.com>, <gaydarboys.net>, and <gaydarcams.net>. The document request is limited in scope and sufficiently specific so as to minimize the burden on Webmoney.

7. **Identity and address of any person to be examined:**

N/A

8. **Questions to be put to the person to be examined or statement of the subject matter about which he is to be examined:**

N/A

9. **Documents or other property to be inspected:**

Generally, Plaintiff is seeking documents relating to Defendants' use of Webmoney to purchase various domain names at issue in the underlying action. Webmoney is located at 119049, 7 Koroviy Val str., Moscow, Russia. For the specific document requests, see the Subpoena Rider attached hereto as **Exhibit 1**.

10. **Any requirement that the evidence to be given on oath or affirmation and any specific form to be used:**

None.

11. **Special methods or procedure to be followed:**

It is requested that:

(a) Webmoney produce the requested documents before September 13, 2007 to:

Greenberg Traurig, LLP, c/o Jason Elster

3

     77 West Wacker Drive, Suite 2500,
     Chicago, Illinois 60601
     U.S.A.

(b)  if any document called for herein is withheld from production for any reason, including, but not limited to, on a claim of privilege or other asserted protection against discovery by any statute, rule, doctrine, decision or other ground, Webmoney provide the following information in writing for each document withheld: 1) a description of the document; 2) a statement of facts constituting the basis for withholding the document; 3) a brief description by subject matter of the privileged matter; and 4) the request(s) as to which the document is responsive; and

(c)  if any dispute arises as to whether certain documents should or should not be produced because of privilege or any other reason, that Webmoney contact attorneys for Plaintiff to discuss a mutually acceptable solution.

12. **Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified:**

Please notify the following persons when and where the documents are to be produced:

Donald J. Detweiler
Sandra G. M. Selzer
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
302-661-7000
*detweilerd@gtlaw.com*
*selzers@gtlaw.com*

   -and-

Paul D. McGrady, Jr.
Anthony L. Abboud
Paul A. Del Aguila
Jason B. Elster
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
312-456-8400

13. **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:**

    None.

14. **Specification of privilege or duty to refuse to give evidence under the law of the State of origin:**

    Webmoney may refuse to produce any document requested under Section 9 above and Exhibit 1 if such document (1) is privileged under a recognized privilege such as the attorney-client privilege, or (2) is attorney work product.

15. **The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by:**

    QSOFT CONSULTING LIMITED

    Paul D. McGrady, Jr.
    Anthony L. Abboud
    Paul A. Del Aguila
    Jason B. Elster
    GREENBERG TRAURIG, LLP
    77 West Wacker Drive, Suite 2500
    Chicago, Illinois 60601
    312-456-8400

16. **Date of request:**

    August ___, 2007

17. **Signature and seal of the requesting authority:**

    _____
    Honorable Joseph J. Farnan, Jr.,
    United States District Court Judge

# EXHIBIT 1

## SUBPOENA RIDER

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, you are commanded to permit inspection and copying of the following designated books, documents, or tangible things in your possession, custody, or control, at the place and time designated in the Subpoena accompanying this Subpoena Rider.

## DEFINITIONS

1. The term "communication" is used in its broadest sense, and means any transmission of information from one person or entity to another, by any means.

2. The term "document" is intended in the broadest sense allowable under the Federal Rules of Civil Procedure, and includes, but is not limited to, any tangible thing and any printed, written, recorded, taped, electronic, graphic, computerized printout, or other matter from any source, however produced or reproduced, whether printed or recorded or reproduced by any other mechanical, photographic, xerographic or electronic process, or written or produced by hand, including but not limited to, any information contained in any computer, computer memory or memory media, including, but not limited to, any personal computer, laptop computer, Palm Pilot, Blackberry, or similar device, and any information recorded on volatile or nonvolatile media, hard disks, and floppy disks by magnetic or electronic impulse, although not yet printed, and all drafts, revisions, foreign language versions or translations to English of any of the foregoing, and all non-identical copies of any item listed above. The term "document" specifically includes any and all materials sent or stored on any e-mail or other electronic communication system.

3. The term "person" means any natural person or any legal entity, including a

proprietorship, partnership, trust, firm, corporation, association, governmental agency, or other organization or association.

4. The terms "reflecting," "regarding," "referring to," and "relating to" mean constituting, consisting of, associated with, or in any way connected with the matter discussed, in whole or in part.

5. The term "contact information" means telephone numbers, facsimile numbers, physical addresses, electronic mail addresses, post office box numbers, mailing addresses, or forwarding addresses of any kind.

6. The terms "Webmoney," "you," "your," and "yours" refer to Webmoney Transfer Ltd. and its present or former owners, directors, officers, partners, employees, agents, consultants, experts, representatives, and attorneys, as well as all other natural persons in the employ of or otherwise acting or purporting to act on its behalf.

7. The term "TDTong" refers to TDTong ltd. and its present or former owners, directors, officers, partners, employees, agents, consultants, experts, representatives, and attorneys, as well as all other natural persons in the employ of or otherwise acting or purporting to act on its behalf.

8. The term "Tong" refers to Teddy Tong and his employees, agents, consultants, experts, representatives, and attorneys, as well as all other natural persons in his employ or otherwise acting or purporting to act on his behalf.

## CLAIMS OF PRIVILEGE

1. If any document called for herein is withheld from production for any reason, including, but not limited to, on a claim of privilege or other asserted protection against

discovery by any statute, rule, doctrine, decision or other ground, please provide a privilege log setting forth the following information for each document withheld:

 (a) A description of the document, including the type of document, date, author, and recipient;

 (b) The basis for withholding the document;

 (c) A brief description by subject matter of the privileged matter; and

 (d) The request(s) as to which the document is responsive.

## DOCUMENTS REQUESTED

1. Any document or communication that reflects the contact information for the owner of purse Z386887046491.

2. Any document or communication that reflects the account number, billing information, or any other contact information relating to the means of payment used to open, register, create, or otherwise deposit funds into purse Z386887046491, or to compensate you for your services related to purse Z386887046491, including but not limited to any credit card(s), bank wire(s) or PayPal account(s).

3. A list of all accounts, e-wallets, or purses registered by, paid for, or otherwise associated with, Tong or TDTong.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1622223 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C

Abbott Laboratories v. Impax Laboratories, Inc.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
ABBOTT LABORATORIES, an Illinois corporation, Fournier Industrie et Sante, a French corporation, and Laboratories Fournier S.A., a French corporation, Plaintiffs,
v.
IMPAX LABORATORIES, INC., a Delaware corporation, Defendant.
No. Civ.A. 03-120-KAJ.

July 15, 2004.

Mary B. Graham, Morris, Nichols, Arsht & Tunnell, Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE, for Plaintiffs and Counter-Defendants.
Richard K. Herrmann, Blank Rome LLP, Wilmington, DE, for Defendant and Counter-Claimants.

MEMORANDUM ORDER
JORDAN, J.

I. INTRODUCTION

*1 Presently before me is a motion by defendant Impax Laboratories, Inc. (" Impax" ) requesting international judicial assistance to take discovery in this case, pursuant to Federal Rule of Civil Procedure 28(b).[FN1] (Docket Item [" D.I." ] 100; the " Motion" .) Plaintiffs Abbott Laboratories (" Abbott" ), Fournier Industrie et Sante, and Laboratories Fournier, S.A. (together, " Fournier" ) oppose the Motion. (D.I.104.) For the following reasons, Impax's Motion will be granted.

> FN1. The Rule provides, in pertinent part, that " [d]epositions may be taken in a foreign country ... pursuant to any applicable treaty or convention, or ... pursuant to a Letter of Request.... A commission or a Letter of Request shall be issued on application and notice on terms that are just and appropriate...." Fed.R.Civ.P. 28(b) (2004).

II. BACKGROUND

This is a patent infringement case brought by Fournier, a French pharmaceutical company, and Abbott, an Illinois corporation, against Impax, a Delaware corporation. (See D.I. 1.) Abbott is the exclusive licensee of Fournier's U.S. Patent Nos. 6,074,670; 6,277,405; 6,589,552; and 6,652,881 (collectively, " the patents-in-suit" ). (Id.; D.I. 104 at 1.) Generally, the patents-in-suit claim both fenofibrate pharmaceutical compositions having high bioavailability and the methods for preparing them. (See D.I. 1 and exhibits attached thereto.) Abbott and Fournier allege that Impax, a generic pharmaceutical company, is infringing the patents-in-suit. (Id.)

During the course of discovery, Impax learned that three people-Andre Stamm, Philippe Reginault, and Maurice Tendero-have information relevant to this litigation. (D.I. 100 at 1-2.) Dr. Stamm is a named inventor for each of the four patents-in-suit.[FN2] (D.I. 104 at 1.) Dr. Reginault provided a declaration relating to one of the patents-in-suit and is also a named inventor for a prior art patent [FN3] that formed the basis for rejections of the patents-in-suit during prosecution. (Id. at 1-2.) Mr. Tendero was involved during prosecution of the patents-in-suit, providing guidance as to how to overcome the prior art rejections. (Id. at 2.)

> FN2. Fournier does not dispute Impax's descriptions of Dr. Stamm, Dr. Reginault, and Mr. Tendero.

> FN3. Curtet, et al., U.S. Patent No. 4,895,726, " Novel dosage form of fenofibrate" (issued January 23, 1990).

All three men are French citizens currently residing in France. (Id. at 2.) Neither Dr. Stamm, nor Dr. Reginault, nor Mr. Tendero are currently employed by Fournier, though Dr. Reginault and Mr. Tendero are former employees of that company. (D.I. 104 at 2; D.I. 113 at 1.) The parties agree that Dr. Stamm, Dr. Reginault, and Mr. Tendero, as French citizens who are third party witnesses, cannot be compelled to provide evidence in the absence of compliance with the Hague Evidence Convention. (D.I. 100 at 2; D.I. 104 at 2.) Fournier concedes that " these three

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 2
Not Reported in F.Supp.2d, 2004 WL 1622223 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

individuals may have some limited information of relevance to the litigation" (D.I. 104 at 2), but opposes Impax's Motion for letters of request so that Impax may depose Dr. Stamm, Dr. Reginault, and Mr. Tendero in France because " Impax has not sufficiently identified the scope of discovery it seeks to take from these individuals in direct violation" of the Hague Convention. (D.I. 104 at 2.)

### III. DISCUSSION

Essentially, Fournier objects to the Motion because it feels that Impax's request to depose Dr. Stamm, Dr. Reginault, and Mr. Tendero is overly broad. (*Id.* at 3.) Impax should, Fournier argues, provide it with a " detailed statement of the subject matters to be covered during the proposed oral depositions of these third party witnesses." (*Id.* at 4-5.) In support of this argument, Fournier relies upon Articles 3(d) and 3(f) of the Hague Convention. (*Id.*)

*2 In response, Impax says that the three witnesses are likely in possession of " an abundance of relevant information." (D.I. 113 at 1.) To support this assertion, Impax has, in its reply brief, set forth detailed reasons why it is seeking the depositions of Dr. Stamm, Dr. Reginault, and Mr. Tendero, citing to information it has obtained thus far in discovery. (*See id.* at 1-3.) For example, Impax points out that, as a named inventor for the patents-in-suit, Dr. Stamm's testimony is highly relevant, as it would be in any patent infringement case. (D.I. 113 at 1-2.) As to Dr. Reginault, Impax notes that he served as Fournier's director of pharmaceutical development until late 2003 or early 2004; is a named inventor for a prior art patent cited against the patents-in-suit; submitted a Declaration in support of patentability for one of the patents-in-suit; and he met with Dr. Stamm regarding the subject matter of the patents-in-suit. (*Id.* at 2-3.) Impax also says that Mr. Tendero was the project manager responsible for " all aspects of Fournier's development of the alleged invention" and that he met with at least one of the named inventors of the patents-in-suit. (*Id.* at 3.) Impax further argues that Articles 3(d) and 3(f) of the Hague Convention do not require it to provide a specific outline of the questions it intends to pose to these witnesses at their respective depositions. (D.I. 113 at 5.)

The Hague Evidence Convention serves as an alternative or " permissive" route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike. *See*

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the District of Iowa,* 482 U.S. 522, 538, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). As a threshold matter, I agree with the parties that application of the Hague Convention is appropriate here, as the witnesses are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of France, and are not otherwise subject to the jurisdiction of this court. *See Tulip Computers Int'l B.V. v. Dell Computer Corp.,* 254 F.Supp.2d 469, 474 (D.Del.2003). The United States and France are contracting states under the Hague Convention. *See* 28 U.S.C. § 1781.

A Letter of Request, or " letter rogatory" , from a United States judicial authority to the competent authority in a foreign state is one of three available methods of taking evidence under the Hague Convention. *Id.* at 472 (citation omitted). Pursuant to the Hague Convention, a Letter of Request must provide the contracting state with certain information regarding the lawsuit and the information sought. *See id.* (citing Hague Evidence Convention, 23 U.S.T. 2555, Art. 3). Specifically, Article 3(d) states that a Letter of Request shall specify " the evidence to be obtained or other judicial act to be performed." Hague Evidence Convention, 23 U.S.T. 2555, Art. 3(d) (1972). Article 3(f) provides that " [w]here appropriate, the Letter shall specify ... the questions to be put to the persons to be examined or a statement of the subject matter about which they are to be examined...." *Id.,* Art. 3(f).

*3 In this case, Impax has complied with Article 3(d) of the Hague Convention. Each of its proposed letters of request for Dr. Stamm, Dr. Reginault, and Mr. Tendero set forth a brief statement concerning the subject matter and relevance of the request and ask the appropriate authority in France to issue an order to compel these witnesses to appear at an oral deposition. (*See* D.I. 100, Exs. 2-4.) This satisfies the requirement of Article 3(d) that Impax specify the " the evidence to be obtained or other judicial act to be performed" in its Letters of Request. *See* Hague Evidence Convention, 23 U.S.T. 2555, Art. 3(d). Contrary to Fournier's assertions, Impax's discovery requests are not overly broad, rather, Impax's desire to depose these three witnesses, who were intimately involved in prosecution of the patents-in-suit is par for the course in any patent litigation.[FN4]

FN4. In the event that Impax's questions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 3
Not Reported in F.Supp.2d, 2004 WL 1622223 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

exceed the proper scope of discovery in France, the French official present at the deposition will be able to stop or limit the questioning. See *Tulip Computers,* 254 F.Supp.2d at 474-75.

The language set forth in Article 3(f) of the Hague Convention is a conditional statement, beginning with the proviso " where appropriate," to modify the direction that questions be specified in advance in order to more clearly define what might otherwise be an unreasonable discovery request. *See, e.g., Societe Nationale,* 482 U.S. at 545-46 and n. 30 (trial court has the discretion to determine the " exact line between reasonableness and unreasonableness" of discovery requests " based on its knowledge of the case and of the claims and interests of the parties" ). Fournier has not come forward with any persuasive reason why, in this case, it would be appropriate to require Impax to set forth the specific questions it intends to pose to Dr. Stamm, Dr. Reginault, and Mr. Tendero in their depositions. *See* Hague Evidence Convention, 23 U.S.T. 2555, Art. 3(f). On the contrary, it appears from Impax's Motion that these gentlemen may possess such a variety of relevant information that it is impracticable and would be counterproductive to require Impax to attempt a more detailed specification of the discovery it seeks.

## IV. CONCLUSION

For these reasons, Impax's Motion (D.I.100) is GRANTED. Impax is ORDERED to advise the court of the earliest date on which it is practicable for it to conduct its depositions of Dr. Stamm, Dr. Reginault, and Mr. Tendero and to provide the court with revised Letters of Request reflecting that date.

D.Del.,2004.
Abbott Laboratories v. Impax Laboratories, Inc.
Not Reported in F.Supp.2d, 2004 WL 1622223 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.